No. 2454
Second Circuit

THOMAS J. LONG v. ALABAMA PETROLEUM COMPANY, ET AL.

(November 4, 1925, Opinion and Decree.)
(December 17, 1925, Rehearing Refused.)

*(Syllabus by the Editor.)*

1. Louisiana Digest—Master and Servant —Par. 159, 159 (a).

Under Section 8, Subsection 1 (b) of the Workmen's Compensation Act No. 20 of 1914 as amended by Act 216 of 1924 an injured employee who proves total disability due to the fact that his ribs were broken or injured causing internal injuries can recover compensation during the time of total disability not to exceed four hundred weeks.

2. Louisiana Digest—Master and Servant —Par. 160 (e).

Under Section 9, Subsection 1 of the Employer's Liability Act No. 20 of 1914 as amended by the Act 38 of 1918, the defendant has the right to have the plaintiff examined at any time previous to the trial, but more than three months after the trial is too late to require plaintiff to submit to an additional examination. At the end of a year from the date of the judgment, the defendant may have the plaintiff again examined.

Appeal from First Judicial District Court of Louisiana, Parish of Caddo, Hon. F. X. Ransdell, Judge.

This is a suit for compensation brought by an injured employee under Section 8, Subsection 1 (b) of the Workmen's Compensation Act No. 20 of 1914. There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

Long and Crow, of Shreveport, attorneys for plaintiff, appellee.

Browne & Browne, of Shreveport, attorneys for defendant, appellants.

ODOM, J. Plaintiff brings this suit under the workmen's compensation act to

recover compensation of $20.00 per week for 400 weeks.

He alleges that he was employed by defendant as a laborer on a drilling rig in Webster parish at a weekly wage of $37.50, and that on January 26, 1925, while at work, he received injuries which have permanently, totally disabled him to do work of a reasonable character.

It is alleged that the Maryland Casualty Company warranted and insured the Alabama Petroleum Company and has agreed to pay all such sums, in cases of this kind, as the employer may be ordered to pay, and that said insurance or guarantee company is a proper party defendant.

The Alabama Petroleum Company answered admitting the employment of plaintiff and the weekly wage and the injury as alleged but denying that the injury to plaintiff was as serious as claimed by him.

It is especially alleged in answer that defendant has not refused to pay plaintiff compensation and that if there were delays in making the payments such delays were due to the fact that respondent was waiting for a report from the physician who was treating plaintiff as to the extent of his injuries.

And it is further alleged that plaintiff is not permanently injured but was only partially, temporarily disabled and that he has suffered disability to labor for a period of only sixteen weeks.

The Maryland Casualty Company answered with practically the same admissions and denials as those set up by its co-defendant, and especially alleged that plaintiff has been paid seven weeks' compensation at $20.00 a week and prays that said amount be credited on whatever judgment may be rendered against it.

There was judgment in the lower court against both defendants in solido for compensation in favor of plaintiff at $20.00 per week during plaintiff's disability, not to exceed 400 weeks, less a credit of $140.00 paid.

From this judgment defendants have appealed.

### OPINION.

The particular kind of work which plaintiff was doing when injured was the pulling of rods and tubing out of old wells. During these operations something hit the plaintiff on the shoulder and side, knocking him down and breaking, as he thinks, three of his ribs.

He says he was rendered unable to work for quite a while.

Later on, at the suggestion of his brother who lives at Smackover, Arkansas, he went to that place and was given employment in the Smackover oil fields by the Amanto Petroleum Company as a gauger, which is light work. He held the place for about fifteen days but had to give it up because he could not climb the steps to the top of the tanks.

He testified that exercise of any kind causes pain in the region of the kidneys and that his condition has not improved and he is not able as yet to do work of a reasonable character. He says:

"When I do anything that will cause this pain in here it will cause my kidneys to throw off water that looks like blood."

He further says that any kind of exercise gives him pain. That he cannot walk or allow his body to remain in one position for very long at a time, although, he says, he sleeps very well and usually about eight hours' during the night, but that he cannot lie comfortably in one position very long.

He has had no work since the latter part of April—about six weeks prior to the trial.

He was injured January 26, 1925.

He indicates a willingness to work but says he is unable to do so on account of the condition of his kidneys and his side.

Doctor L. H. Pirkle, who was called as a witness by defendants, treated the plaintiff immediately following the accident.

He testified that he found an injury to the right side in the region of the ribs and at the time he suspected that his ninth and tenth ribs were fractured. He ordered an x-ray made, which showed that the tenth and eleventh ribs on the right side were fractured, with some displacement of the fragments of the eleventh rib, about three-eighths of an inch, with a curving towards the right side. He had an examination of plaintiff's urine made, which showed—

"a fairly large amount of pus present at that time."

He treated the patient from 28th of January to 16th of February, and says he was in a fairly good condition when he discharged him, and says he was a little sore over his side, had some callous over the affected ribs, but able to get around and doing fairly well, and says his injuries were about as completely healed as could be expected at that time.

Doctor Pirkle's attention was called to the testimony of Doctor Butler who made an examination of plaintiff's urine a few days previous to the trial, which showed blood and pus, and he was asked what that would indicate, and he said:

"Well, that would indicate that he has some inflammatory condition in the genito-urinary tract. It would be impossible from that alone to tell where it was coming from."

He said there would have to be some further examination in order to tell just where it was coming from, and that the blood and pus might be coming from the kidneys, the bladder, the urethra or any where else along the tract. He says there are no indications that plaintiff had any veneral disease and that

"We found no indications of anything except this pus in the urine, which would indicate trouble in the tract somewhere that we did not locate; * * *."

His attention was called to the testimony of Doctor Cassity and of Doctor Butler with reference to the condition of plaintiff's urine and that he had pyloritus and was asked if he considered the condition serious, and he said:

"That would be determined by the character of the inflammation; it might be of such character that it would respond readily to treatment and it might not respond readily."

He further testified that in his opinion the injury described would not produce pus in the kidneys but it might so lower the vitality of the kidneys that a germ might be deposited in them and set up inflammation and cause pyloritus; and he said the condition might or might not be serious.

Doctor Boyce, who is also connected with the Tri-State Sanitarium, made an examination of the plaintiff in connection with Doctor Pirkle's treatment of him and gave about the same testimony with reference to the injury and the pus in the urine.

He made another examination in April and found no pus in the urine. He says, however, that at the time patient was in the Sanitarium he said he had had gonorrhœa while he was in the navy and for that reason could not say what is the cause of plaintiff's present trouble; that if he had ever had a venereal disease that might be the cause of his present condition.

Plaintiff says he never had any venereal disease and says Doctor Boyce is mistaken in saying that he admitted having had gonorrhœa. He explained that while he was in the Sanitarium, Doctor Boyce was treating a patient who had a prostate case and while he was present the question of medicine used came up and that he told Doctor Boyce that while in the navy he

had seen a case of that kind treated and from that learned something of the treatment administered.

We think Doctor Boyce is mistaken about what the plaintiff told him; and we can see how he fell into the error. He no doubt treats many patients and it would de difficult, we imagine, for him to recall accurately what each patient said without a record. In view of the fact that plaintiff says he has never had any venereal disease and that both Doctor Pirkle and Doctor Boyce say there are no indications at the time he was first treated that he had ever been so afflicted and the fact that he was a strong, able bodied man, able to do heavy manual labor prior to the accident, we conclude that the condition which the physicians found at or just before the trial were brought about by the accident.

Doctor Willis P. Butler, a bacteriologist, was called by the plaintiff. He testified that during the week preceding the trial, which was on June 2, 1925, he had examined several specimens of plaintiff's urine, one taken on Thursday, one on Friday and one on Saturday, and he said the examinations showed—

"There was quite a large amount of red blood and some albumen found; * * *. There was some pus and blood in the urine in all four samples."

He said the condition of the urine made him suspect inflammation or infection, but he, of course, does not know the cause. He said, however, that it could not be chronic nephritis or Bright's disease.

Doctor C. H. Cassity made an examination of the plaintiff on March 19th. He said he found a knot on the tenth rib just over the upper portion of the kidneys, and that it appeared to be sore over the injured area, and that when plaintiff bent over there was a trembling and jerking of the muscles; that he experienced considerable difficulty in bending over and had a slight amount of fever. That there was "sufficient amount of pus in the urine to be seen with the natural eye".

And he gave it as his opinion that the pus was coming from the kidneys. He further gave it as his opinion that the condition which he found was caused or brought on by the injury and could have been caused in no other way.

From all the testimony we are convinced that plaintiff is suffering serious disability and that he was not at the time of the trial able to do manual labor of a reasonable character.

Doctor Pirkle and Doctor Boyce testify that it was impossible to determine whether the blood and pus in the urine came from the kidneys, from the prostate or from any other portion of the genito-urinary tract and that a further examination was necessary in order to determine the source of infection, and counsel for defendants asked the trial court to appoint an expert "to find out how this man is", and the court said, "that is exactly what these doctors are testifying about", and refused to appoint experts.

This took place during the course of the trial.

Counsel for defendant did not except to the ruling of the court and filed no motion for a continuance in order to have such examination made, but continued with the examination and cross-examination of the witnesses.

Subsection 1 of Section 9 of Act 20 of 1914 as amended by Act 38 of 1918 provides:

"That an injured employee shall submit himself to examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter, as often as may be reasonably necessary and at all reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payment under this act."

The defendant made no request, so far as the record shows, to have the plaintiff examined previous to the trial. They summoned and examined two physicians who had treated plaintiff and on their testimony they relied. Having summoned Doctors Pirkle and Boyce as their witnesses they are presumed to have known when they went into the trial what their testimony would be. They cannot, therefore, plead surprise. They knew or are presumed to have known that these physicians would testify that they could not tell the source of infection and the cause of the blood and pus in the urine and they should have previous to the trial called on plaintiff to appear and submit to further examination. They did not do this but took the chance of a favorable judgment on the testimony adduced. More than three months after the trial in September and October they wrote plaintiff requesting that he appear for further examination, but that was too late.

At the expiration of one year from the date on which the judgment takes effect they can have the case re-opened for further examination, according to the provisions of the statute.

For the reasons assigned, the judgment of the lower court is affirmed at the cost of defendants.